# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UTAH MARBLEHEAD, LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>DIRK KEMPTHORNE, Secretary of the Interior;<br>UNITED STATES DEPARTMENT OF THE INTERIOR; and<br>BUREAU OF LAND MANAGEMENT,<br><br>                Defendants. | Civil Action 05-00844 (HHK) |

## MEMORANDUM OPINION

Utah Marblehead, LLC ("Utah Marblehead"), brings this action against Dirk Kempthorne, in his official capacity as Secretary of the Interior, the Department of the Interior ("DOI"), and DOI's sub-agency, the Bureau of Land Management ("BLM"), pursuant to the Administrative Procedure Act ("APA") and the Declaratory Judgment Act. Utah Marblehead seeks a declaratory judgment and judicial review of decisions by BLM and the Interior Board of Land Appeals ("IBLA"), which declared 96 of Utah Marblehead's mining claims null and void by operation of law because Utah Marblehead failed to timely pay its annual maintenance fees.[1] Before the court is the Department's motion for summary judgment [#15] and Utah

---

[1] Although former Secretary Gale Norton was originally a named defendant, she has been substituted by Secretary Kempthorne. "When a public officer is a party to an action in an official capacity and during its pendency . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d)(1).

Marblehead's cross-motion for summary judgment [#18].[2]  Upon consideration of the motions, the oppositions thereto, and the Administrative Record ("AR"), the court concludes that the Department's motion must be granted.

## I.   FACTUAL BACKGROUND

In 2002, Utah Marblehead held 96 unpatented mining claims in Utah. That year, federal law required holders of unpatented mining claims to pay a $100 annual maintenance fee for each mining claim to the pertinent BLM State office by September 1, 2002.  Pub. L. No. 107-63, 115 Stat. 418, 419 (2001) (codified at 30 U.S.C. § 28f).  Due to an intervening holiday and weekend, the required filing date for 2002 was September 3. AR 1-13 at 1.[3]  BLM regulations permitted receipt of the maintenance fees up to fifteen days after the filing deadline, if the package that contained payment was postmarked "by a bona fide delivery service" prior to that date.  43 C.F.R. § 3833.0-5(m) (2001).[4]

Utah Marblehead alleges that on August 29, 2002, it sent its annual fees in an envelope postmarked by a Pitney Bowes meter stamping machine and transmitted that envelope to the United States Postal Service ("USPS") for delivery to the BLM office in Utah.  Pl.'s Mot. for

---

[2] The court will refer to the defendants collectively as the "Department."

[3] Each document in the AR is labeled with a Bates number that reflects the file in which a particular document is located and the number of the specific document itself.  For example, the third page of the thirteenth document in the first file is labeled "UTAH MARBLEHEAD BLM-UT-00001-000013, Page 3 of 6."  For simplicity, the court will abbreviate citations to the AR by removing the leading zeroes and references to the Utah BLM Office and Utah Marblehead.  Consequently, the document listed above will be cited as AR 1-3 at 3.  All other documents referenced in the AR will be cited accordingly.

[4] When citing to a rule within Title 43 of the Code of Federal Regulations, the court cites to the version as of Oct. 1, 2001, which was in force at the time of the events giving rise to this action, unless otherwise noted.

Summ. J. ("Pl.'s Mot.") at 2; AR 1-32 at 1–13.  According to Utah Marblehead, the sealed envelope was then returned to its office for no reason and with no markings to indicate USPS handling.  Pl.'s Mot. at 2–3; AR 1-32 at 1; AR 2-19 at 1–4.  Utah Marblehead then allegedly re-packaged the payment in an Airborne Express envelope and sent it via overnight delivery to the BLM Office.  Pl.'s Mot. at 3; AR 1-32 at 1, 13; AR 2-19 at 1–2.

On September 18, 2002, the BLM received Utah Marblehead's fees in the Airborne Express overnight delivery package.  AR 1-16 at 1–2.  That package contained two checks amounting to $9600, an opened envelope with a Pitney Bowes meter postage stamp dated August 29, 2002, and three letters.  AR 1-32 at 1–13.  One letter was from Bernadette Kortze, a receptionist at Carmeuse Lime, Inc. ("Carmeuse"), who wrote that the materials had been mailed on August 29 but had been sent back to Carmeuse on September 17.  *Id.* at 1.[5]  The other two letters were written by Garth Kuhnhein, Director of Mining Engineering at Carmeuse, and referred to the enclosed maintenance fee payment.  *Id.* at 2, 8.[6]

BLM declared Utah Marblehead's 96 mining claims null and void by operation of law on September 20, 2002.  AR 1-13 at 1.  Because the Airborne Express envelope was postmarked September 17, 2002, and the envelope with the meter date of August 29, 2002 was not postmarked by a bona fide delivery service, the agency ruled that the maintenance fees were not timely filed.  *Id.*  IBLA affirmed BLM's decision on March 29, 2005.  AR 1-16 at 1–4.

---

[5] Although the AR never explicitly clarifies the connection between Utah Marblehead and Carmeuse, there are several indications that they are one and the same, at least for purposes of this litigation.  *See* AR 1-32 at 1–13; AR 1-43 at 1.

[6] The letters authored by Kuhnhein were dated August 28, 2002.  AR 1-32 at 2–8.

Utah Marblehead subsequently commenced this action alleging that the Department abused its discretion in declaring Utah Marblehead's mining claims null and void.

## II.  ANALYSIS

### A.     APA Standard of Review

Pursuant to the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974) (quoting 5 U.S.C. § 706(2)(A)).  A court must ensure that the deciding body has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Kennecott Greens Creek Mining Co. v. Mine Safety & Health Maint.*, 476 F.3d 946, 952 (D.C. Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency's factual findings must be based upon substantial evidence. *JSG Trading Corp. v. Dep't of Agric.*, 235 F.3d 608, 611 (D.C. Cir. 2001) (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion whentaking into account whatever in the record fairly detracts from its weight" (internal quotation marks omitted)).  Furthermore, the AR should support the agency's action, and the reviewing court should base its decision on the record at the time of the agency's decision. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *see also Ass'n of Data Processing Serv. Orgs., Inc., v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) (noting that "in the case of formal proceedings the factual support must be found in the closed record as opposed to elsewhere").

The Department asserts that Utah Marblehead failed to timely pay its annual maintenance fees and BLM and IBLA did not, therefore, act arbitrarily or capriciously when they declared Utah Marblehead's mining claims null and void by operation of law.

### B.    Federal Law Obligating Mining Claim Holders to Pay Annual Maintenance Fees

In 2001, Congress passed the Department of the Interior and Related Agencies Appropriations Act of 2002 ("Appropriations Act"), which required that:

> The holder of each unpatented mining claim, mill or tunnel site, located pursuant to the mining laws of the United States, whether located before, on or after the enactment of this Act, shall pay to the Secretary of the Interior, on or before September 1 of each year for years 2002 and 2003, a claim maintenance fee of $100 per claim or site[.]

Pub. L. No. 107-63, 115 Stat. at 418–19.  Federal law also provides that "[f]ailure to pay the claim maintenance fee . . . shall conclusively constitute a forfeiture of the unpatented mining claim . . . by the claimant and the claim shall be deemed null and void by operation of law." 30 U.S.C. § 28i.

Pursuant to the Appropriations Act, the BLM regulations in force during the period relevant to this suit required claim holders to pay their annual maintenance fees by September 1 or their claims would be deemed null and void.[7]  43 C.F.R. §§ 3833.1-5, 3833.4(a)(2).  The regulations, however, provided some flexibility and deemed a filing timely if the filing was "received within the time period prescribed by law, or, if mailed to the proper BLM office," it

---

[7] If September 1 falls on a weekend or holiday in a given year, BLM considers the fee timely filed if received the next day the BLM office is open.  43 C.F.R. § 1822.14.  In 2002, the filing deadline was September 3, 2002 due to both an intervening weekend and a holiday.  AR 1-13 at 1; AR 1-16 at 3.

was timely if "contained within an envelope clearly postmarked by a bona fide mail delivery service within the period prescribed by law and received by the proper BLM State Office by 15 calendar days subsequent to such period." 43 C.F.R. § 3833.0-5(m).[8]

### C.     The Postmark Rule

Neither party disputes that BLM received Utah Marblehead's fees for 2003 after September 3, 2002.  BLM did, however, receive Utah Marblehead's fees on September 18, 2002, the last day permitted under the postmark rule.  Therefore, the question before BLM and IBLA was whether Utah Marblehead satisfied the postmark rule.

IBLA (and BLM) determined that the requirements of the postmark rule were not satisfied because the Airborne Express package BLM received from Utah Marblehead had a postmark dated September 17, and the envelope inside the package postmarked prior to the September 3 filing deadline was affixed with a private meter stamp.  AR 1-16 at 2–3; AR 1-13 at 1.  IBLA concluded that "[t]he postage meter mark on the envelope cannot be considered a postmark of a bona fide delivery service under 43 C.F.R. § 3833.0-5(m), because the means and manner of affixing it are within [Utah] Marblehead's exclusive control."  AR 1-16 at 2.  In rejecting Utah Marblehead's claim, IBLA noted that BLM expanded the definition of a "bona fide delivery service" in the August 30, 1994 rulemaking to revise 43 C.F.R. § 3833.0-5(m):

> Previously, BLM had recognized only the [USPS] as a bona fide delivery service.  The preamble to the Aug. 30, 1994, rulemaking explained: "One comment asked whether paragraph (m) was restricted to mailings postmarked by the [USPS].  This paragraph has been amended to include other mail delivery systems that are independent of the claimant and for which the date of filing with the system can be verified."

AR 1-16 at 2–3 (quoting 59 Fed. Reg. 44846, 44848 (Aug. 30, 1994)).  IBLA further observed

---

[8] This is the "postmark rule."

that "[i]t appears that BLM's expansion of the delivery services was intended to include overnight delivery services, such as Federal Express, which are *independent of the claimant*." *Id.* at 3 n.4 (quoting *Paul Tobeler*, 131 IBLA 245, 248 (1994)) (emphasis added). Because the envelope stamped with the Pitney Bowes meter machine prior to the September 3, 2002, filing deadline was not postmarked by a delivery service independent of the claimant, IBLA rejected Utah Marblehead's claim.⁹

### 1. Utah Marblehead's use of a Pitney Bowes machine

Utah Marblehead asserts that the private meter postmark on the original envelope constitutes evidence that the package was postmarked by a bona fide delivery service. Pl.'s Motion at 5. Relying on the postmark rule's expansion, Utah Marblehead contends that "rather than being restricted in 1994, the postmark rule was actually expanded to include 'other mail delivery *systems* that are independent of the claimant and for which the date of filing with the *system* can be verified.'" *Id.* at 7 (quoting 59 Fed. Reg. 44,846, 44,848) (emphasis added)).

Utah Marblehead's emphasis on "systems" is misplaced. According to the Department (which is entitled to deference in its interpretation of its own regulations and rulemakings, *see Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150 (1991) ("[A]n agency's construction of its own regulations is entitled to substantial deference."); *see also PPL Montana, LLC v. Surface Transp. Bd.*, 437 F.3d 1240, 1245 (D.C. Cir. 2006) (noting that "an agency's interpretation of its own rule is given controlling weight unless it is plainly erroneous or

---

⁹ In its motion for summary judgment, the Department also points out that a Pitney Bowes stamping machine "is not a mail *delivery service* [because i]t merely allows the user to pre-pay the postage and affix the postage as necessary." Defs.' Mot. for Summ. J. at 11–12 (emphasis added).

inconsistent with the regulation" (citation and internal quotations omitted))), the phrases "by a bona fide delivery service" and "independent of the claimant" have far greater significance. AR 1-16 at 2.  IBLA determined that the postmark on the envelope inside the Airborne Express package had not been postmarked "by a bona fide delivery service" because Utah Marblehead had exclusive control over the private meter stamping machine.  *Id.*  Therefore, "[Utah] Marblehead could not avail itself of the grace period afforded by 43 C.F.R. § 3833.0-5(m)."  *Id.* at 2.[10]  This interpretation of the postmark rule is far from arbitrary.  BLM clearly expressed its concern for independence and external verification of filings in the preamble to the rule's 1994 final rulemaking when it stated that the rule only encompassed systems that are both (1) "independent of the claimant" and (2) "for which the date of filing with the system can be verified."  59 Fed. Reg. at 44,848.[11]  The BLM and IBLA interpretation (that both the delivery

---

[10] Although IBLA states that the postmark rule affords a grace period, Utah Marblehead correctly asserts that the rule, which originated in 1982, simply recognizes that materials postmarked prior to the filing deadline sometimes fail to reach the relevant BLM office until after the filing deadline due to particularly slow mail delivery.  Pl.'s Mot. at 6–7 (citing Recordation of Mining Claims and Filing of Annual Assessment Work or Notice of Intention To Hold Mining Claims, Mill Sites, or Tunnel Sites, 47 Fed. Reg. 56,300, 56,302 (Dec. 15, 1982)).  That BLM requires a maintenance fee payment to be postmarked by a delivery service independent of the claimant prior to the filing deadline is consistent with the notion that the postmark rule is an evidentiary rule rather than an attempt by BLM to create a grace period not authorized by Congress.  *See Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 864 (D.C. Cir. 2006) (declaring that "an agency['s] construction of a statute cannot survive judicial review . . . if the regulation reflects an action that is inconsistent with the agency's authority").

[11] Utah Marblehead cites to a Florida district court decision for the proposition that "the preamble language does not have the force of law."  *United States. v. Pasquariello*, 1994 LEXIS 20924, at *32 (S.D. Fla. Apr. 19, 1994).  A preamble, however, can provide helpful explanatory authority and may have independent legal effect.  *See Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1223 (D.C. Cir. 1996) (recognizing that a preamble to a rule may have independent legal effect when an agency "inten[ds] to bind either itself or regulated parties[, or,] absent an express statement to that effect, [a court] may infer that the agency intended the preamble to be binding if what it requires is sufficiently clear").

and postmarking system be outside the control of the claimant) fits the rule.[12]

### 2. Prior IBLA decisions

Utah Marblehead next argues that IBLA acted inconsistently with prior decisions when it declared Utah Marblehead's mining claims null and void by operation of law.[13]  Pl.'s Mot. at 11–13.  Despite Utah Marblehead's assertions to the contrary, IBLA has consistently held, since the 1994 expansion of the postmark rule, that a postmark affixed by a Pitney Bowes private meter machine does not constitute a postmark "by" a bona fide delivery service.  *See*, *e.g.*, *Paul Tobeler*, 131 IBLA at 248 (holding that a "Pitney-Bowes postmark . . . cannot be considered a postmark of a 'bona fide delivery service' under 43 C.F.R. § 3833.0-5(m)"); *see also Jon Roalf*, 169 IBLA 58, 62 (2006) (rejecting the appellant's assertion that "a date affixed by a Pitney-Bowes postage meter constitute[s] evidence of a bona fide delivery service").

Utah Marblehead points to *Barodynamics, Inc.*, 135 IBLA 352 (1996), in which IBLA reversed a BLM decision which declared the appellant's mining claims abandoned and void for failure to timely file evidence of its assessment work.  *Id.* at 353.  The appellant had submitted its materials to a contract post office for delivery prior to the filing deadline, but due to post office error, the materials were sent back to the appellant after the filing deadline with a postmark affixed by the post office and the stamps, "Return to Sender" and "Refused Postage Due," on the

---

[12] Utah Marblehead never contends that the Pitney Bowes stamping machine was not within its exclusive control.

[13] "Normally, an agency must adhere to its precedents in adjudicating cases before it." *Consol. Edison Co. of N.Y., Inc. v. F.E.R.C.*, 315 F.3d 316, 323 (D.C. Cir. 2003) (citation omitted).  If, however, an agency adopts a new rule, it "may be applied retroactively to the parties in an ongoing adjudication, so long as the parties before the agency are given notice and an opportunity to offer evidence bearing on the new standard, and the affected parties have not detrimentally relied on the established legal regime." *Id.* (citations omitted).

envelope.[14]  When the materials were returned, the appellant re-packaged them and submitted them after the filing deadline.  In its defense, the appellant provided a letter signed by a post office worker who admitted the failed delivery was due to post office error.  In light of the independently verified evidence that the appellant had submitted its materials prior to the filing deadline (the letter and the postmark affixed by the post office prior to the filing deadline), IBLA reinstated the mining claims.  *Id.* at 354–55.

Utah Marblehead contends that *Barodynamics* supports its position because here, as in *Barodynamics*, "there is substantial . . . evidence that the maintenance fees were timely placed with the Postal Service."  Pl.'s Reply at 5.[15]  Unlike that case, however, the only envelope here with a postmark date prior to the filing deadline was affixed with a stamp from a private meter machine within the claimant's exclusive control, and there is no independent evidence verifying Utah Marblehead's version of events.[16]

---

[14] The filing deadline at issue in *Barodynamics* was December 30, 1992.  135 IBLA at 353.  The envelope, however, bore a postmark affixed by the post office dated December 23, 1992.  *Id.*

[15] Relying on the private meter stamp and the letters from Kortze and Kevin Whyte, Carmeuse's Vice President and General Counsel, which allege that the payment for the maintenance fees was submitted to the USPS on August 29, Utah Marblehead argues that there is substantial evidence that it submitted its payment prior to the filing deadline.  Pl.'s Reply at 4; AR 1-32 at 1; AR 2-19 at 1–4.

[16] Utah Marblehead also erroneously relies on *Chemical Products Corp.*, 109 IBLA 357, 359–60 (1989), in which IBLA conceded that a private meter postmark may be considered evidence of the date of mailing.  Pl.'s Mot. at 13 n.3.  That case, however, stands for the contrary proposition that in order to take advantage of the postmark rule, a claimant must follow the strict letter of the regulation as interpreted by BLM.  *Chemical Products*, 109 IBLA at 359–60 (affirming BLM's decision that the mining claims were abandoned and void where the rule in force allowed postmarking only by USPS).

The BLM and IBLA decisions at issue here were supported by the record.  Utah Marblehead's annual maintenance fee payment to the BLM office arrived after the filing deadline and had not been postmarked by a delivery service independent of the claimant prior to that deadline, as was required by the rule as interpreted by BLM.  Furthermore, the Department has acted neither arbitrarily nor capriciously in setting forth and requiring adherence to that interpretation.

### III.  CONCLUSION

For the foregoing reasons, the court grants the Department's motion for summary judgment.  An appropriate order accompanies this memorandum opinion.

                                        Henry H. Kennedy, Jr.
                                        United States District Judge

Dated: March 29, 2007